UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 21-8021

---

In re: Larry Klayman

---

REPORT AND RECOMMENDATION OF THE
STANDING COMMITTEE ON ATTORNEY DISCIPLINE

---

Present: SHWARTZ, BIBAS, and PORTER, Circuit Judges

This contested attorney-discipline matter comes before the Standing Committee on Attorney Discipline after Larry Klayman, Esq., was ordered to show cause why this Court should not impose discipline reciprocal to the 90-day suspension imposed by the Supreme Court of Pennsylvania. In accordance with Rule of Attorney Disciplinary Enforcement 11.3, we set forth our findings and recommend that this Court impose a reciprocal 90-day suspension.

## I. Background

Larry Klayman was admitted to practice before this Court in 1989 and has represented two clients in one appeal since then. He has no record of formal discipline in this Court.

We begin by briefly summarizing the relevant background, taking the facts from the other courts' disciplinary decisions and from the decisions made during the litigation on which the discipline was based. See R.A.D.E. 10.7, 10.9.

In 1994, Mr. Klayman founded Judicial Watch, a political activist group, and served as its general counsel for nearly a decade. After ending his employment with Judicial Watch, Mr. Klayman worked as a public interest attorney. In this role, Mr. Klayman represented three clients in lawsuits against Judicial Watch without obtaining the organization's consent.

The first client Mr. Klayman represented, Sandra Cobas, was a former director of a Judicial Watch regional office. While serving as general counsel at Judicial Watch, Mr. Klayman provided legal advice to the organization regarding hostile work environment claims Ms. Cobas made against Judicial Watch. After Ms. Cobas and Mr. Klayman ended their employment with the organization, Ms. Cobas filed a hostile work environment lawsuit against Judicial Watch. Without seeking Judicial Watch's consent, Mr. Klayman entered an appearance in Ms. Cobas's civil lawsuit and filed motions and an appeal on her behalf.

Mr. Klayman also represented Louise Benson without Judicial Watch's consent. While employed by Judicial Watch, Mr. Klayman solicited a donation from Ms. Benson to purchase a building for the organization. When Judicial Watch did not purchase the building, Ms. Benson filed a lawsuit against the organization seeking the return of her donation. After leaving Judicial Watch, Mr. Klayman entered an appearance as co-counsel for Ms. Benson in her lawsuit against the organization.

The third client Mr. Klayman represented without consent was Peter Paul, a former client of Judicial Watch. As Judicial Watch's general counsel, Mr. Klayman drafted, edited, and approved a representation agreement for Mr. Paul under which the organization agreed to provide legal services to him. Following Judicial Watch's representation of him in a civil lawsuit, Mr. Paul sued the organization alleging that it breached its representation agreement with him. After Mr. Klayman left Judicial Watch and without seeking its consent, he entered an appearance on behalf of Mr. Paul in his civil lawsuit against Judicial Watch.

## II. The D.C. Bar Disciplinary Proceedings

The District of Columbia's Office of Disciplinary Counsel commenced disciplinary proceedings against Mr. Klayman in 2018, charging him with violating several of the District of Columbia's Rules of Professional Conduct.

After a hearing, the Hearing Committee recommended that Mr. Klayman be suspended for 90 days, with reinstatement contingent upon a showing of his fitness to practice law. See In re Klayman, 228 A.3d 713, 717 (D.C. 2020). The Committee found that Mr. Klayman violated D.C. Rule of Professional Conduct 1.9, which requires an attorney to obtain consent before representing a client with materially adverse interests to a former client, in all three representations. Id. It also determined that Mr. Klayman violated Rule 8.4(d), which prohibits conduct prejudicial to the administration of justice, in his representation of Mr. Paul. Id. Additionally, the Committee found that Mr. Klayman gave false testimony during the hearing. Id.

The Board on Professional Responsibility, by contrast, agreed that Mr. Klayman violated Rule 1.9 but disagreed with the Hearing Committee's findings that he violated Rule 8.4(d) and provided false testimony during the hearing. Id. The Board ultimately

recommended that Mr. Klayman be suspended for 90 days but rejected the fitness requirement as a condition for reinstatement. Id.

Mr. Klayman did not challenge the Board's finding that he violated Rule 1.9. On June 11, 2020, the District of Columbia Court of Appeals accepted the Board's findings and imposed a 90-day suspension, effective July 11, 2020. As a condition of reinstatement, the D.C. Court of Appeals required that Mr. Klayman complete a continuing legal education course on conflicts of interest.

## III. The D.C. Circuit's Disciplinary Proceedings

The D.C. Court of Appeals suspension prompted the U.S. Court of Appeals for the D.C. Circuit to begin reciprocal disciplinary proceedings against Mr. Klayman.

Mr. Klayman filed a response and several supplemental responses opposing reciprocal discipline. The matter was thereafter referred to a merits panel. Following briefing, oral argument was held on February 17, 2021.

Mr. Klayman argued that he qualified for three of the four exceptions to reciprocal discipline under Rule IV(c) of the D.C. Circuit's Rules of Disciplinary Enforcement: deprivation of due process, infirmity of proof, and grave injustice. See also Selling v. Radford, 243 U.S. 46, 50-51 (1917). In a published decision issued on March 26, 2021, the D.C. Circuit imposed a reciprocal 90-day suspension on Mr. Klayman. See In re Klayman, 991 F.3d 1289 (D.C. Cir. 2021). For the reasons briefly discussed below, the D.C. Circuit rejected all three of Mr. Klayman's arguments.

### 1. Due Process

Mr. Klayman contended that he suffered "undue prejudice" because "the bar proceedings were instituted nearly eight (8) years after the alleged ethical infractions occurred" and, as a result, he was unable to "produce all of the documentary evidence and witnesses in support of his defenses." Id. at 1295. According to the D.C. Circuit, however, the due process exception concerns "violations arising from lack of notice or opportunity to be heard." Id. In any event, the D.C. Circuit concluded that Mr. Klayman was unable to show that he suffered any prejudice.

### 2. Infirmity of Proof

Mr. Klayman also challenged his bar suspension by arguing that he did not commit an ethical violation representing Ms. Cobas, Ms. Benson, and Mr. Paul because he was fulfilling his ethical obligation under Rule 1.3(a), which requires attorneys to represent clients zealously and diligently. Id. at 1294. The D.C. Circuit rejected this argument as being "entirely without merit," noting that "Rule 1.9 is absolute" as it "provides no exception to its prohibition on successive representation." Id. (internal citation omitted).

**3. Grave Injustice**

The D.C. Circuit also rejected Mr. Klayman's claim that grave injustice would result in a reciprocal 90-day suspension. In support of this argument, he urged the Court to consider his "course of work as a public interest attorney." Id. at 1295. In rejecting this argument, the Court observed that Rule 1.9 "contains no exception for public interest lawyers." Id.

* * *

Finding that Mr. Klayman had failed to satisfy his burden of showing why the court should not impose reciprocal discipline, the D.C. Circuit imposed a prospective 90-day suspension. Mr. Klayman subsequently filed a petition for panel and en banc rehearing, and the D.C. Circuit denied both requests.

## IV. Other Reciprocal Discipline Proceedings

Based on the D.C. Bar's suspension, the U.S. Court of Appeals for the Ninth Circuit initiated reciprocal discipline proceedings against Mr. Klayman. Mr. Klayman opposed the reciprocal suspension, and on December 2, 2020, the Ninth Circuit issued an order discharging its reciprocal discipline proceeding. Recognizing that Mr. Klayman had been readmitted to the D.C. Bar,[1] the Ninth Circuit declined to issue a substantive ruling. The dismissal was without prejudice and explicitly contemplated the initiation of future reciprocal discipline proceedings against Mr. Klayman.

Similarly, the U.S. District Court for the Northern District of Texas opened reciprocal discipline proceedings against Mr. Klayman. Mr. Klayman opposed the reciprocal discipline, and the district court held oral argument on the matter. After conducting an intrinsic review of the record and considering the Selling factors, the district court found that Mr. Klayman failed to demonstrate that he should not be subject to reciprocal discipline. On December 16, 2020, the district court issued an order suspending Mr. Klayman for a period of 90 days. The district court imposed the sentence retroactively and deemed the suspension already served when it issued the order.

The Supreme Court of Pennsylvania also initiated reciprocal discipline proceedings against Mr. Klayman. Mr. Klayman failed to submit a response to the court's order directing him to provide reasons against the imposition of reciprocal

[1] Mr. Klayman was reinstated to the D.C. Bar on December 10, 2020. However, since January 7, 2021, Mr. Klayman has been temporarily suspended due to a second, unrelated disciplinary proceeding in the D.C. Court of Appeals.

discipline. Accordingly, on January 15, 2021, the Supreme Court of Pennsylvania suspended Mr. Klayman from the practice of law in Pennsylvania for a period of 90 days.

Additionally, the U.S. Court of Appeals for the Federal Circuit instituted reciprocal discipline proceedings against Mr. Klayman. When Mr. Klayman failed to respond to the court's order directing him to show cause why he should not face a reciprocal suspension, the Federal Circuit issued an order on June 8, 2021, suspending him for 90 days.[2]

## V. This Court's Disciplinary Proceedings

This Court began its own reciprocal disciplinary case against Mr. Klayman in May 2021, upon receipt of Pennsylvania's suspension order. In accordance with Rule of Attorney Disciplinary Enforcement 6.1, our Clerk initiated the proceedings with an order to show cause. Mr. Klayman filed a response to the show-cause order contesting the imposition of reciprocal discipline.

## VI. Analysis

When a member of this Court's bar has been disciplined by another court, we may impose reciprocal discipline on the attorney. See Fed. R. App. P. 46(b)(1)(A); R.A.D.E. 2.1(b). Although the other court's disciplinary decision does not "conclusively bind[]" us, it is nonetheless "entitled to respect." See In re Ruffalo, 390 U.S. 544, 547 (1968). Indeed, we impose reciprocal discipline unless the attorney demonstrates

> (a) that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process;
>
> (b) that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject;
>
> (c) that the imposition of the same discipline by this Court would result in grave injustice; or
>
> (d) that the misconduct established is deemed by this Court to warrant substantially different discipline.

See R.A.D.E. 10.9 (citing Selling, 243 U.S. at 50–51). It is the attorney's burden to show by clear and convincing evidence that one or more of these elements precludes reciprocal discipline. See Surrick, 338 F.3d at 232.

[2] There may be other state or federal reciprocal discipline proceedings against Mr. Klayman of which this Court is unaware.

In response to this Court's order to show cause, Mr. Klayman incorporates by reference the brief he filed in response to the Ninth Circuit's order directing him to show cause why reciprocal discipline should not be imposed. Mr. Klayman's Ninth Circuit response brief advances the same arguments that the D.C. Circuit carefully considered and rejected in its well-reasoned, precedential opinion. See In re Klayman, 991 F.3d at 1294-96. Because the D.C. Circuit already engaged in thoughtful analysis rejecting these arguments, we will not discuss the arguments at great length here.

**1. Due Process**

Once again, Mr. Klayman argues that he was deprived of due process because the D.C. Bar "complaint was filed nearly eight years after the alleged infractions occurred" and during that time, "witnesses disappear[ed], memories fade[d], and documents [we]re lost." (Resp. Ex. 1 at p. 6). The plain language of R.A.D.E. 10.9(a) protects against due process violations arising from "lack[] [of] notice or opportunity to be heard." R.A.D.E. 10.9(a); see also Selling, 243 U.S. at 50-51 ("That the state procedure, from want of notice or opportunity to be heard, was wanting in due process."). For due process purposes, "it is undisputed that Mr. Klayman was given notice of the charges against him and had the opportunity to call and cross-examine witnesses, make arguments, and submit evidence." In re Klayman, 991 F.3d at 1295 (internal citation omitted). Mr. Klayman's failure to persuade the Hearing Committee, the Board, and the D.C. Court of Appeals that he did not commit an ethical violation does not mean he was denied due process.

Moreover, even if R.A.D.E. 10.9(a)'s due process protections extend beyond its plain language, Mr. Klayman does not explain how the eight-year time period between the ethical violations and the D.C. Bar proceedings caused him prejudice. See In re Klayman, 993 F.3d at 1295. Mr. Klayman therefore has not clearly and convincingly shown that the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process.

**2. Infirmity of Proof**

Mr. Klayman repeats his argument that he did not commit an ethics violation in representing Ms. Cobas, Ms. Benson, and Mr. Paul because he "reasonably believed he had an ethical obligation to represent them, and chose to uphold his duty to these clients" under Rule 1.3(a) and the doctrine of necessity. (Resp. Ex. 1 at pp. 3-4). The D.C. Circuit previously rejected this argument as "entirely without merit" because "Rule 1.9 is absolute" and "provides no exception to its prohibition on successive representation." In re Klayman, 993 F.3d at 1294.

We have reviewed the record of the disciplinary proceedings and the numerous reciprocal-discipline decisions. The record is replete with evidence to support the D.C. Bar's conclusion that Mr. Klayman's representation of Ms. Cobas, Ms. Benson, and Mr.

Paul violated Rule 1.9. Mr. Klayman has given us no reason to disagree with the D.C. Bar's assessment in this instance.

For these reasons, Mr. Klayman has not clearly and convincingly shown that there was such an infirmity of proof establishing the misconduct as to give rise to the clear conviction that this Court could not, consistent with its duty, accept as final the conclusion on that subject.

### 3. Grave Injustice

Lastly, Mr. Klayman contends that imposing reciprocal discipline would result in a grave injustice because of the nature of his work as a public interest attorney who "often takes cases on pro bono, not for personal financial gain, but to try to make society a better place." (Resp. Ex. 1 at p. 8). The D.C. Circuit rejected this argument entirely, finding that Rule 1.9 "contains no exception for public interest lawyers." In re Klayman, 993 F.3d at 1295. Indeed, Rule 1.9 is "essential to the proper functioning of our justice system," and without the rule, "clients may be reluctant to confide completely in their attorneys." Id. at 1296. Thus, "the public interest exception Mr. Klayman urges would in fact be contrary to the public interest." Id. Accordingly, Mr. Klayman has failed to demonstrate that a grave injustice would occur if this Court imposed reciprocal discipline.

## VII. Recommendation

For the foregoing reasons, we find that Mr. Klayman has not met his burden to show that reciprocal discipline is undeserved. We therefore recommend imposing a reciprocal 90-day suspension.[3]

Any exceptions to this Report and Recommendation must be filed within twenty-one days. See R.A.D.E. 11.3. Thereafter, this Report and Recommendation and any exceptions will be forwarded to the active members of the Court for a final decision. See id.

[3] The D.C. Circuit's and the Supreme Court of Pennsylvania's reciprocal suspensions were issued prospectively. We recommend similarly imposing a prospective suspension here.

Respectfully submitted,

s/ Patty Shwartz
Circuit Judge

s/ Stephanos Bibas
Circuit Judge

s/ David J. Porter
Circuit Judge

DATED: August 1, 2022

**A True Copy:**

Patricia S. Dodszuweit, Clerk